# MASTER PURCHASING AGREEMENT

This Master Purchasing Agreement ("Agreement") is dated 3/20/15, and is by and between Liberty University, Inc., a Virginia non-stock corporation ("Liberty") and Media Partners, Inc. ("Contractor").

Whereas, Liberty desires from time to time to engage Contractor to perform Services and/or provide Products; and Contractor desires to perform those Services for and/or provide those Products to Liberty;

Whereas, Liberty and Contractor desire to enter an agreement to set forth the general terms and conditions on which Contractor will provide Services or Products to Liberty at a later date;

Now therefore, in consideration of the mutual promises contained herein, the sufficiency of which is hereby acknowledged, Liberty and Contractor adopt the above recitals as true and agree as follows:

## Article 1
## Definitions

As used in this Agreement, the following capitalized terms have the meanings stated below:

1.1   "Deliverables" means all materials, work product, documents, data, and other deliverables developed or provided by Contractor in connection with any Services provided to Liberty.

1.2   "Products" means any physical goods provided by Contractor to Liberty pursuant to this Agreement.

1.3   "Services" means any services provided by Contractor to Liberty pursuant to this Agreement including any subsequent Statements of Work.

## Article 2
## Services and Products

2.1   <u>Statements of Work</u>. From time to time during the term of this Agreement, Liberty may solicit Contractor to provide Services or Products in a Statement of Work, a Purchase Order, Proposal, or similar document. A "Statement of Work" is a document substantially in the form attached as <u>Exhibit A</u> that outlines the obligations of the parties with respect to particular Services, Products, and/or Deliverables. Statements of Work will reference this Agreement, and upon being executed by the parties, will form a part of this Agreement. Each Statement of Work will include, at a minimum, a description of the Services or Products to be provided to Liberty and the charges or rate for those Services or Products. In addition, Statements of Work may set forth any additional terms and conditions agreed



upon by the parties such as (a) completion schedules; (b) specifications; (c) acceptance criteria; (d) service levels; and (e) estimated charges.

2.2 Purchase Orders. A "Purchase Order" is a document substantially in the form attached as Exhibit B that Liberty will issue each time it makes a payment for Services or Products, with or without a Statement of Work. Multiple Purchase Orders might accompany a Statement of Work, depending on the complexity and duration of the provision of Services and/or Products.

2.3 Compliance with Statements of Work and Purchase Orders. Contractor shall complete all Services and/or provide Products in accordance with the terms and requirements of the applicable Statements of Work or Purchase Order, and this Agreement. For the avoidance of doubt, Contractor shall not perform any Services or provide any Products except under an executed Statement of Work or Purchase Order; and Liberty will be under no obligation to pay for any Services performed, Products rejected, or expenses incurred by Contractor that were not authorized in a Statement of Work or Purchase Order. Each Statement of Work and Purchase Order is subject to and is deemed to incorporate by reference the terms of this Agreement. Contractor acknowledges that it is a non-exclusive provider of services and/or goods to Liberty and that Liberty will have no obligation to enter into any Statements of Work with Contractor.

2.4 Conflicts. Any and all Services or Products provided by Contractor during the term of this Agreement will be governed by the provisions of this Agreement. In the event of a conflict between or among the provisions of this Agreement and specific provisions set forth in a Statement of Work or Purchase Order, **the provisions of this Agreement will prevail**, unless the Statement of Work or Purchase Order specifically identifies the provision of this Agreement that is superseded and states that it is superseded.

2.5 Conditions of Offer or Acceptance. To the extent a Statement of Work or Purchase Order is construed as an offer for the sale of goods by Liberty, Contractor's acceptance is strictly limited to the terms of that Statement of Work or Purchase Order and Liberty hereby notifies Contractor of its objection to any different or additional terms in Contractor's acceptance of that Statement of Work or Purchase Order. To the extent a Statement of Work or Purchase Order is construed as such an offer, it will expire thirty (30) days after the date appearing on the Statement of Work or Purchase Order. If a Statement of Work or Purchase Order is construed as Liberty's acceptance of Contractor's offer for the sale of goods, that Statement of Work or Purchase Order is expressly conditioned on Contractor's written assent to any terms additional to or different from Contractor's offer contained herein. Contractor shall notify Liberty whether it assents to such additional or different terms within a reasonable time and in no event later than thirty (30) days following receipt of the additional or different terms. If Liberty does not receive Contractor's assent to such additional or different terms within thirty (30) days, then Liberty's acceptance will be deemed revoked without need for any action on the part of Liberty.

2.6 Inherent Services. If any services, functions, or responsibilities not specifically described in this Agreement or any relevant Statements of Work or Purchase Orders are

Case 6:20-cv-00002-NKM   Document 1-1   Filed 01/03/20   Page 2 of 19   Pageid#: 11

reasonably required for the proper performance and provision of the Services, or are an inherent part of or necessary sub-task included within the Services, they will be deemed to be implied by and included within the scope of the Services to be provided under such agreements.

2.7     Completion Schedules. Unless otherwise specified in a Statement of Work or Purchase Order, all completion or delivery schedules attached to Statements of Work or Purchase Orders are firm or fixed performance dates, and Contractor shall complete such Services or deliver such Products in accordance with those schedules. Any changes to the Schedule must be made in accordance with Section 2.7. Liberty and Contractor acknowledge and agree that time is and will be of the essence of this Agreement, including any subsequent Statements of Work or Purchase Orders.

2.8     Changes. Liberty may propose changes to Statements of Work or Purchase Orders, including changes to Completion or Delivery Schedules, Specifications, Services, and Products. If Liberty proposes any such change in writing, Contractor shall promptly notify Liberty in writing if Contractor believes that such change merits an equitable adjustment to the charges to be paid to Contractor with respect to the Statement of Work or Purchase Order. Following receipt of such information, Liberty may elect to withdraw its proposals for the change or enter into negotiations with Contractor regarding equitable adjustments to affected charges. Any agreed upon changes, including adjustments to charges, will be reflected in written amendments to the affected Statements of Work or reissued Purchased Orders, signed by the authorized representatives of both parties. If Liberty proposes a change to a Statement of Work or Purchase Order and the parties are unable to agree on an adjustment to the fees to be paid to Contractor with respect to the Statement of Work or Purchase Order, then Liberty at its sole discretion may terminate the Statement of Work or Purchase Order, in which event Contractor will be entitled to payment for Services or Products provided prior to the termination. In no event will Contractor be entitled to payment in excess of the Statement of Work or Purchase Order price or lost opportunity costs, unabsorbed overhead or anticipated profits as a result of such termination and in no event will said termination costs exceed the amount of the Statement of Work or Purchase Order.

2.9     Quality and Inspection. Payment for the Services, Deliverables, and/or Products delivered hereunder will not constitute acceptance thereof. Liberty reserves the right to inspect Services, Deliverables, and Products within a reasonable time after completion or delivery, but such inspection does not relieve Contractor of its obligations under this Agreement. Liberty will have the right in its sole discretion to reject any and all Services, Deliverables, and Products that are defective or nonconforming. If Liberty rejects the Services, Liberty may, but does not have the obligation to, permit Contractor to cure any defective or nonconforming services within a reasonable period of time. Deliverables and Products rejected may be returned to Contractor at its expense and, in addition to Liberty's other rights, Liberty may charge Contractor all expenses of unpacking, examining, repacking, and reshipping such Deliverables and Products. If Liberty receives Services, Deliverables, or Products whose defects or nonconformities are not apparent on examination, Liberty reserves the right to require Contractor to provide conforming Services or to replace such

Deliverables and Products, as well as payment of any costs incurred by Liberty as a result of those defects or nonconformities.

2.10 Service Warranties. CONTRACTOR REPRESENTS, WARRANTS, AND COVENANTS THAT: (1) THE SERVICES AND SPECIFICATIONS FURNISHED BY IT HEREUNDER WILL BE PERFORMED WITH REASONABLE SKILL AND CARE, USING SUITABLY QUALIFIED PERSONNEL WHO ARE LEGALLY PERMITTED TO WORK IN THE UNITED STATES, IN A MANNER CONSISTENT WITH INDUSTRY STANDARDS AND PRACTICES AND IN COMPLIANCE WITH ALL APPLICABLE LAWS; (2) THE SERVICES WILL CONFORM IN ALL MATERIAL RESPECTS WITH THE DESCRIPTIONS AND SPECIFICATIONS SET FORTH IN THIS AGREEMENT, INCLUDING ANY APPLICABLE STATEMENTS OF WORK OR PURCHASE ORDERS; AND (3) NONE OF THE SERVICES PROVIDED HEREUNDER INFRINGE UPON ANY PATENT, COPYRIGHT, TRADEMARK , TRADE SECRET OR OTHER INTELLECTUAL PROPERTY RIGHTS OF THIRD PARTIES. Contractor shall indemnify, defend, and hold harmless Indemnified Parties, as defined below, from any claim to the contrary.

2.11 Products Warranties. CONTRACTOR EXPRESSLY WARRANTS THAT ALL PRODUCTS TO BE SUPPLIED UNDER THIS AGREEMENT AND ANY STATEMENTS OF WORK OR PURCHASE ORDERS (A) CONFORM TO THE SPECIFICATION DRAWINGS, SAMPLES, OR OTHER DESCRIPTION UPON WHICH THE ORDER IS BASED, (B) ARE FIT AND SUFFICIENT FOR THE PURPOSE INTENDED, (C) ARE MERCHANTABLE, (D) ARE OF GOOD MATERIAL AND WORKMANSHIP, (E) ARE FREE FROM DEFECT, AND (F) DO NOT INFRINGE UPON ANY PATENT, COPYRIGHT, TRADEMARK, TRADE SECRET OR OTHER INTELLECTUAL PROPERTY RIGHTS OF THIRD PARTIES. CONTRACTOR AGREES TO REPLACE OR CORRECT DEFECTS (INCLUDING LABOR AND TRANSPORTATION) IN ANY GOODS NOT CONFORMING TO THE FOREGOING WARRANTY PROMPTLY, WITHOUT EXPENSE TO THE LIBERTY. Contractor hereby assigns and agrees to assign to Liberty whatever rights Contractor has and will have under any manufacturer warranties of which Contractor is and will be a holder. Upon request, Contractor agrees to execute any document to effectuate such assignment(s). Contractor shall indemnify, defend, and hold harmless Indemnified Parties, as defined below, from any claim to the contrary. In the event of failure by Contractor to correct defects in or replace non-conforming goods promptly after reasonable notice to Contractor, Liberty may make such corrections or replace such goods and the Contractor shall pay reimburse the costs incurred by Liberty.

2.12 Ownership of Intellectual Property. Unless otherwise agreed in writing or provided hereunder, including in any Statements of Work or Purchase Order, Liberty will retain all rights, title, and interests in all Deliverables, which will be considered "works made for hire," as defined in the U.S. Copyright Act of 1976 ("Intellectual Property"). Contractor agrees to execute any and all documents and do any and all further acts, at Liberty's expense, as may be requested by Liberty from time to time to carry out the intent and purposes of this section, including, but not limited to, executing and delivering all instruments requested by Liberty to secure or protect its rights in and to the Intellectual Property or giving testimony in support of creation, inventorship or authorship consistent with this Agreement as may be necessary in any legal proceedings or any application proceedings for any U.S. or foreign patents or copyrights. As owner of the Intellectual Property, Liberty will have the right to

Master Purchasing Agreement        Page 4 of 16              Liberty University

independently use, make improvements to, make derivative works of and license the Intellectual Property. To the extent Liberty uses, makes improvements to, makes derivative works of or licenses any of the Intellectual Property, Liberty will have no obligation to pay any royalty or other fee to Contractor beyond the compensation specified in this Agreement.

i) *Pre-Existing Intellectual Property.* Contractor will retain all rights, title and interests in the Intellectual Property that it has as of the date of this Agreement ("Pre-Existing IP"). However, Liberty will have an irrevocable, royalty-free, and perpetual license to use for its internal business purposes any of Contractor's Pre-Existing IP that is incorporated into any Deliverable.

ii) *Independently Developed Intellectual Property.* Contractor will retain all rights, title, and interests in all Intellectual Property that it independently developed for purposes outside of the scope of the Statement of Work or Purchase Order yet developed during the term of this Agreement ("Independently Developed IP"). However, Liberty will have an irrevocable, royalty-free, and perpetual license to use for its internal business purposes any of Contractor's Independently Developed IP that is incorporated into any materials, work product, documents, data, and other deliverables developed or provided by Contractor in connection with any services or products provided to Liberty.

## Article 3
## Term and Termination

3.1 Term. The term of this Agreement will commence on the date first mentioned above, and will expire thirty-six (36) months thereafter.

3.2 Early Termination. This Agreement, including any applicable Statements of Work or Purchase Orders, may be terminated prior to the end of its term as follows: (i) a party may terminate this Agreement if the other party materially breaches any provision and fails to cure such breach within thirty (30) days of receiving written notice of the breach; (ii) Liberty may terminate this Agreement for any reason by providing Contractor with thirty (30) days prior written notice of termination; (iii) Liberty may immediately terminate this Agreement upon the sale of a majority of the Contractor's assets or upon the sale or change in ownership of a majority of the voting securities of Contractor; (iv) Liberty may immediately terminate this Agreement if Liberty believes that any act or omission by Contractor has or is likely to have an adverse effect on Liberty's reputation; or (v) Liberty may immediately terminate this Agreement if Contractor becomes insolvent, ceases to conduct business in the ordinary course, files for dissolution or becomes subject to any bankruptcy proceeding.

3.3 Effect of Termination. Termination of this Agreement will be in addition to and not in limitation of any other rights or remedies to which either party is or may be entitled. Termination of this Agreement will not relieve any party from any liability for any breach of this Agreement occurring prior to termination. The provisions contained in this Agreement which, by their nature, may be or must be enforced subsequent to its termination, including, but not limited to, indemnification, warranties, confidentiality, and intellectual

Case 6:20-cv-00002-NKM   Document 1-1   Filed 01/03/20   Page 5 of 19   Pageid#: 14

property ownership, will survive and will not be affected by the termination of this Agreement, regardless of the reason for termination.

## Article 4
## Payment Terms

4.1     Rates and Prices. The rates or prices to be charged by Contractor and paid by Liberty will be as set forth in each separate Statement of Work, Purchase Order, or other written exhibit appended hereto, which exhibit will be governed by this Agreement and incorporated herein.

4.2     Reimbursable Expenses. Reimbursable expenses, including, but not limited to travel and living expenses, must be estimated in advance. In the event that Contractor determines that charges for expenses may exceed the amount stated in the Statement of Work or Purchase Order, Contractor must inform Liberty in writing and acquire Liberty's prior written approval to exceed the limit. Contractor will bill Liberty for actual travel & living expenses within sixty (60) days of occurrence and must provide itemized receipts to Liberty upon request. Liberty will not reimburse for alcohol.

4.3     Payment Terms. Unless other payment terms are specified on the Statement of Work or Purchase Order, Contractor will invoice Liberty: (a) upon Liberty's written acceptance of work performed on a fixed price basis or (b) monthly in arrears, for Services or Products provided on a time and materials basis and for any reimbursable out of pocket expenses. Each invoice must be accompanied by a description of the Services or Products provided, including copies of time reports which relate to the Services being invoiced on a time for services basis, and an itemization of all fees and expenses being invoiced and evidence of any reimbursable expenses actually paid by Contractor. All invoices, except for amounts disputed by Liberty, will be payable within forty-five (45) days of receipt, unless otherwise stated in a Statement of Work or Purchase Order. Any disputed amounts will not affect payment of undisputed charges and expenses. Liberty shall pay Contractor the undisputed portion of each invoice within forty-five (45) days after its receipt.

4.4     Setoff or Recoupment. Liberty will have the absolute and unconditional right, at any time and in its sole discretion, to effectuate a setoff or recoupment of any amount owed by Liberty to Contractor against any claim(s) Liberty might have against Contractor (including, without limitation, claim(s) based on defective Services, Products, damaged or lost property, and Contractor overcharges or other billing errors). Liberty may exercise its setoff and recoupment rights by deducting the amounts owed to it by Contractor from Liberty's next remittance or payment to Contractor, or in any other manner deemed appropriate by Liberty.

## Article 5
## Subcontractors

Case 6:20-cv-00002-NKM   Document 1-1   Filed 01/03/20   Page 6 of 19   Pageid#: 15

5.1     Subcontractors. Contractor may not subcontract or delegate the performance of any portion of this Agreement, any portion of any Statement of Work, Purchase Order, or Services without Liberty's prior written consent. In cases in which Liberty does consent to such subcontracting or delegation, the terms of this Article will apply (in addition to such other terms as may be agreed upon by the parties in writing).

5.2     Subcontracting Agreement. Contractor shall provide in its agreements with subcontractors and delegees ("Subcontractors") such written provisions as are sufficient to enable and require Contractor to comply with the provisions of this Agreement and subsequent Statements of Work or Purchase Orders. In no event will Contractor be relieved of any of the provisions of this Agreement by virtue of any subcontract or assignment hereof.

5.3     Management of Subcontractors. Contractor shall monitor and manage such Subcontractors, and shall guarantee their performance. Contractor will remain directly responsible in accordance with this Agreement for the performance of Services and provision of Products subcontracted or delegated by Contractor.

5.4     Inadequate Performance by Subcontractors. Even if an inadequacy in a Subcontractor's performance does not amount to a breach of this Agreement, if Liberty notifies Contractor that it is dissatisfied with the performance of any Subcontractor, Contractor shall use its best efforts to address Liberty's concern regarding such performance. Further, Liberty will have the right to reject any personnel of Subcontractor's whose qualifications, in Liberty sole discretion, do not meet the standards considered by Liberty as necessary for the performance of the Services or the provision of the Products. In addition, if Liberty becomes dissatisfied with any of Subcontractor's employees providing the Services or Products for any reason that is not unlawful, Liberty may notify Subcontractor of the details of its dissatisfaction, and if Liberty requests, Contractor shall immediately remove that individual from providing Services or Products and replace the individual with other qualified employees approved in advance by Liberty in accordance with the requirements of this Agreement.

5.5     Payments to Subcontractors. Contractor will be solely responsible for the payment of all its Subcontractors it engages.

## Article 6
## Taxes

6.1     Tax-Exempt Status. Liberty is exempt from certain federal, state, and local taxes as a 501(c)(3) corporation; therefore, sales to Liberty are exempt from Virginia sales and use taxes. Contractor shall assist Liberty in its ordering and payment of materials and equipment, if any, and by arranging for delivery and proper storage of any materials or equipment purchased by Liberty, for its use or installation on projects. Contractor will work with Liberty in making the tax-free purchases of materials and equipment on behalf of Liberty and will provide all documents and information to taxing authorities necessary to preserve Liberty's tax-free purchases. If Liberty should become subject to any federal, state, or local taxes during the term of this Agreement, Liberty shall reimburse Contractor for any

cost or expense incurred. Any other taxes imposed on Contractor on account of this Agreement will be borne solely by Contractor.

6.2    Contractor's Taxes. Contractor will be responsible for any sales, use, excise, value added, services, consumption, and other taxes and duties payable by Contractor on any goods or services used or consumed by Contractor in providing the Services or Products where the tax is imposed on Contractor's acquisition or use of such goods or services and the amount of tax is measured by Contractor's costs in acquiring such goods or services. Contractor will also be responsible for withholding, paying, and reporting any and all required federal, state, or local income, employment, and other taxes and charges imposed by any jurisdiction in respect of or in connection with compensation of all persons performing Services under this Agreement, any Statement of Work, and any Purchase Order.

## Article 7
## Insurance

7.1    Insurance Coverage Requirements. In accordance with University insurance requirements published at http://www.liberty.edu/index.cfm?PID=27996, Contractor shall maintain, at its sole cost and expense, the following insurance coverage during the term of this Agreement:

i) Commercial general liability coverage: $1,000,000 per occurrence ,

ii) Employer liability:       $500,000 each accident,
                              $500,000 each employee,
                              $500,000 each disease, and

iii) Worker's compensation insurance in the amount required by law.

7.2    Additional Requirements. Liberty must be named as an additional insured with respect to the commercial general liability insurance and automobile liability insurance, if such coverage is required in Section 7.1. All policies required herein must be written on an occurrence basis with the exception of professional liability policy which may be written on a claims made or occurrence basis. All policies must be placed with carriers who have an AM Best rating of A-/VIII or above. A waiver of subrogation must be provided to Liberty, with respect to the commercial general liability and automobile liability policies.

7.3    Certificate of Insurance. Contractor must deliver certificates evidencing the insurance required by this Article prior to the date on which Contractor first performs the Services to Liberty and upon request by Liberty throughout the term of this Agreement. Such certificates must at least set forth the amount of insurance, the additional insured

Case 6:20-cv-00002-NKM   Document 1-1   Filed 01/03/20   Page 8 of 19   Pageid#: 17

endorsement (if applicable), the policy number, the date of expiration, and an endorsement that Liberty will receive more than thirty (30) days written notice prior to cancellation, non-renewal, material change to or expiration of the policy. The certificates must bear an inked or stamped signature. Certificates of insurance should be sent to the Liberty business unit responsible for the Agreement.

7.4 Liberty's Procurement Right. In the event Contractor's insurance providing the coverage required under this Article is canceled and replacement insurance is not obtained prior to the effective date of such cancellation or if Contractor fails to procure the insurance required herein, Liberty, at its option, will have the right to procure such coverage and charge the expenses incurred to Contractor or terminate this Agreement including any outstanding Statements of Work and Purchase Orders in addition to any other rights or remedies Liberty may have.

## Article 8
## Indemnification

8.1 Contractor shall defend and indemnify Liberty and its directors, officers, employees, and agents (each an "Indemnified Party") against, reimburse each Indemnified Party for, and hold each Indemnified Party harmless from, all losses, claims, damages, liabilities and costs (including attorneys' fees)(collectively, "Losses") incurred by an Indemnified Party as a result of (a) any breach by Contractor of any of the terms, conditions, covenants, representations, or warranties contained herein, (b) any personal injury, death, or property damage caused by any defective Services, Products or Deliverables, or by any employees, contractors, or representatives of Contractor; (c) any claim by an employee or contractor of the Contractor for wages, benefits or other compensation; (d) Contractor not properly withholding and paying tax amounts for its employees and contractors; or (e) any third-party claim alleging that any of the Services, Deliverables, or Products infringe upon such third-party's patent, copyright, trademark, trade secret, or other intellectual property rights.

## Article 9
## Confidentiality

9.1 "Confidential Information," Defined. "Confidential Information" means nonpublic information that Liberty designates as being confidential to Contractor or which, under the circumstances surrounding disclosure, reasonably ought to be treated as confidential by Contractor. Confidential Information will not include any information that: (a) is or subsequently becomes publicly available without Contractor's breach of any obligation owed to Liberty; (b) was known by Contractor prior to Liberty's disclosure of such information; (c) became known to Contractor from a source other than Liberty other than by the breach of an obligation of confidentiality owed to Liberty; or (d) is independently developed by Contractor without reference to Confidential Information.

9.2 Obligations Regarding Confidential Information. Contractor shall: (a) refrain from disclosing any Confidential Information of Liberty to third parties; (b) take reasonable

Master Purchasing Agreement        Page 9 of 16        Liberty University

Case 6:20-cv-00002-NKM   Document 1-1   Filed 01/03/20   Page 9 of 19   Pageid#: 18

security precautions, at least as great as the precautions it takes to protect its own confidential information but no less than reasonable care, to keep confidential the Confidential Information of the Liberty; (c) refrain from disclosing, reproducing, summarizing, and/or distributing Confidential Information of the Liberty except in pursuance of Contractor's business relationship with Liberty, and only as otherwise provided hereunder; and (d) refrain from reverse engineering, decompiling, or disassembling any Confidential Information disclosed by Liberty under this Agreement.

9.3 Permitted Use of Confidential Information. Contractor may use Confidential Information only to accomplish the purposes of this Agreement, including any Statement of Work or Purchase Orders. Contractor may disclose Confidential Information only to Contractor's employees and consultants on a need-to-know basis, provided that such employees and consultants agree to maintain the confidentiality of the Confidential Information.

9.4 Ownership of Confidential Information. All Confidential Information is and shall remain the property of Liberty. By disclosing Confidential Information to Contractor, Liberty does not grant any express or implied right to Contractor to or under any patents, copyrights, trademarks, or trade secret information except as expressly provided herein.

9.5 Disclosure Required by Law. Contractor may disclose Confidential Information in accordance with a judicial or other binding governmental order, provided that Contractor gives Liberty reasonable notice prior to such disclosure to allow Liberty a reasonable opportunity to seek a protective order or equivalent.

9.6 Remedies. Contractor shall notify Liberty immediately upon discovery of any unauthorized use or disclosure of Confidential Information and will cooperate with Liberty in every reasonable way to help Liberty regain possession of the Confidential Information and prevent its further unauthorized use or disclosure. Contractor acknowledges that monetary damages will not be a sufficient remedy for unauthorized disclosure of Confidential Information and that Liberty will be entitled, without waiving any other rights or remedies, to such injunctive or equitable relief as may be deemed proper by a court of competent jurisdiction.

## Article 10
## Miscellaneous Provisions

10.1 Return of Liberty's Data. To the extent Liberty provides Contractor with any data during the term of this Agreement, Contractor shall upon termination of this Agreement return such data to Liberty in a useable electronic form, and erase, destroy, and render unreadable in its entirety all such data retained by Contractor in some other form in a manner that prevents its physical reconstruction through the use of commonly available file restoration utilities, and certify in writing that these actions have been completed within 30 days of the termination of this Agreement or within 7 days of the request of Liberty, whichever occurs first.

10.2 <u>Confidential Records Compliance</u>. To the extent Contractor receives education records or otherwise becomes aware of information from education records directly related to a student and protected by the Family Educational Rights and Privacy Act of 1974, 20 U.S.C. § 1232, as amended (popularly known as "FERPA"), and other laws with respect to its activities under this Agreement, Contractor acknowledges it has a duty to maintain the privacy of student records and agrees that its use and maintenance of these education records, including the use and disclosure of personally identifiable information concerning a student from education records, will always be in accordance with in accordance with FERPA as if Contractor was itself an educational institution. Specifically, Contractor shall comply with Contractor's obligations under FERPA as a "school official" and FERPA's "legitimate educational interests" limitation on its use or disclosure of education records. Additionally, Contractor shall implement reasonable and typical administrative, technical, and physical safeguards to secure its facilities and systems from unauthorized access, and to secure any protected education records Contractor might possess. Contractor agrees to abide by FERPA's limitation on re-disclosure of personally identifiable information in education records; to not use or disclose education records created or received from, by, or on behalf of Liberty or its students for any purpose other than the purpose for which such disclosure is made; and to not use or disclose such education records except as permitted by this Agreement, as required by law, or as authorized by Liberty in writing.

10.3 <u>PCI Compliance</u>. To the extent Contractor receives, stores, processes, and/or transmits cardholder data (e.g. credit card numbers and other related information, as such term is defined by the Payment Card Industry (PCI) Data Security), Contractor shall comply with all PCI Data Security Standards.

10.4 <u>Advertising</u>. Contractor may not use Liberty's name, logo, or other service marks, or the fact that Liberty contracts with Contractor in any of Contractor's product or service literature or advertising without the prior written consent of Liberty.

10.5 <u>Independent Contractor</u>. All services and goods provided by Contractor will be provided as an independent contractor. This Agreement does not create a joint venture, partnership, or an employer-employee relationship between Liberty and Contractor. Contractor, and not Liberty, will be solely responsible for the compensation of persons assigned to perform the Services hereunder, including any obligation for payment of workers' compensation and unemployment insurance, and for withholding income and other taxes and social security as required by law. Contractor is an independent business and will not be eligible for, and will not participate in, any employer pension, health, or other fringe benefit plan of Liberty.

10.6 <u>Attorneys' Fees</u>. In the event of any dispute between Owner and Contractor, whether or not a lawsuit or other proceeding is filed, the prevailing party will be entitled to recover its reasonable attorneys' fees and costs actually incurred in enforcing such party's rights hereunder, including attorneys' fees and costs incurred in litigating entitlement to attorneys' fees and costs, as well as in determining the amount of recoverable attorneys' fees and costs. The reasonable costs to which the prevailing party is entitled will include costs that are taxable under any applicable statute, rule or guideline, as well as non-taxable costs,

including, but not limited to, costs of investigation, copying costs, electronic discovery costs, telephone charges, mailing an delivering charges, information technology support charges, consultant and expert witness fees, travel expenses, and court reporter fees, regardless of whether such costs are otherwise taxable.

10.7    Solicitation of Employment; Dual Employment. During the Term and for a period of twenty-four (24) months thereafter, Contractor shall not employ, hire or solicit for employment any persons employed by Liberty University during the Term of this Agreement without the prior written consent of Liberty's Vice President of Human Resources.

10.8    Gifts. Neither Contractor nor any of its principals or officers shall provide any of Liberty's trustees or employees with any gifts, gratuities or other benefits that go beyond the common courtesies usually associated with legal business practices of vendors or that exceed token or nominal value. Neither Contractor nor its principals or officers shall make any payment of cash or cash equivalents (gift certificates, etc.) in excess of $50 per year to any Liberty trustee or employee, or to any member of a Liberty trustee or employee's family by blood, adoption or marriage. Those prior prohibitions on gifts do not apply to Liberty trustees and employees who are related by blood, adoption or marriage to Contractor's principals or officers or with whom a principal or officer of Contractor has a pre-existing close personal relationship. If a Liberty trustee or employee, regardless of his or her relationship with Contractor's principal or officer, solicits any payment outside this Agreement or any gift from Contractor or any of its principals or officers, Contractor shall immediately report the solicitation in writing to Liberty's Vice President of Human Resources.

10.9    Conflicts of Interest. All Liberty employees are expected to avoid any investment, interest, or association which interferes, might interfere, or might be thought to interfere with the employee's independent exercise of judgment in Liberty's best interest. Such investments, interests and associations are conflicts of interest. A conflict of interest exists where the employee, any member of his or her family by blood, adoption or marriage, or any close personal relation (i) has a significant direct or indirect financial interest in, or obligation to, Contractor; (ii) is a principal, officer, employee or representative of Contractor; (iii) accepts gifts of more than token or nominal value from Contractor or any of its principals or officers; or (iv) receives any special consideration as a result of any transaction between Liberty and Contractor. Liberty employees are required to disclose any possible conflicts of interest to Liberty's Vice President of Human Resources. Similarly, Contractor represents that it has disclosed, and in the future shall disclose in writing any possible conflicts of interest to Liberty's Director of Procurement, as well as to the Liberty employee(s) with whom it is dealing or, if the possible conflict involves such person(s), to that person's(s') immediate supervisor. Contractor shall also not create any conflict of interest, as described above, with a Liberty employee, any member of a Liberty Employee's family by blood, adoption or marriage, or any close personal relation of a Liberty employee without first disclosing it in writing to Liberty's Vice President of Human Resources and Director or Procurement.

10.10  Entire Agreement; Modifications. This Agreement, including any Statements of Work and Purchase Orders, constitutes the entire and integrated agreement between the parties with respect to the terms addressed therein. All previous understandings relative thereto, either written or oral, are hereby annulled and superseded. No modification to this Agreement or any Statements of Work or Purchase Orders will be binding on either party unless it is in writing and signed by both parties. All disclaimers, conditions, limitations on liability and other terms set forth in any invoice, purchase order, acknowledgment, packing slip, confirmation, click-through or click-wrap agreement or other document or agreement of Contractor which conflict with the terms of this agreement will not be binding on Liberty and are hereby made null and void notwithstanding any of their terms to the contrary.

10.11  Force Majeure. Any delay or failure in the performance by either party hereunder will be excused if and to the extent caused by the occurrence of a Force Majeure. For purposes of this Agreement, Force Majeure will include, but not be limited to: acts of God, civil unrest, fires, riots, wars, or embargoes. Notwithstanding anything to the contrary contained herein, if either party is unable to perform hereunder for a period of thirty (30) consecutive days, then the other party may terminate this Agreement immediately without liability by ten (10) days written notice to the other.

10.12  Counterparts. This Agreement may be executed in one or more counterparts, all of which will be considered one and the same agreement, and will be effective when one or more such counterparts have been signed by each of the parties and delivered to the other parties.

10.13  Severability. If any term or provision of this Agreement or any Statement of Work or Purchase Order should be held to be invalid, unenforceable, or illegal, such holding will not invalidate or render unenforceable any other provision thereof, and the remaining provisions of those documents will not be impaired thereby.

10.14  Waiver. The failure to enforce or the waiver by either party of one default or breach of the other party will not be considered to be a waiver of any subsequent default or breach.

10.15  Assignment; Delegation. Contractor may not assign, subcontract, delegate, or transfer any of its rights or obligations under this Agreement, any Statements of Work, or any Purchase Order without Liberty's prior written consent.

10.16  Notices. Any and all notices, demands, consents, requests by or from one party to the other required by this Agreement, including any Statement of Work or Purchase Orders, must be in writing and sent by (a) postage paid, certified mail, return receipt requested, or (b) a reputable national overnight courier service with receipt therefor, or (c) personal delivery, and addressed in each case as follows:

If to Liberty:  
Liberty University  
Attn: Procurement Dept.

If to Contractor:  
Media Partners, Inc. (MPI)  
Attn: Nancy Bono

Master Purchasing Agreement        Page 13 of 16        Liberty University

1971 University Blvd.  13200 Strickland Road / Suite 114-153
Lynchburg, VA 24515  Raleigh, NC 27613

10.17 <u>Governing Law; Forum Selection</u>. This Agreement, including any Statements of Work or Purchase Orders, will be governed by and construed in accordance with the laws of the Commonwealth of Virginia without giving effect to any choice or conflict of law provisions or rules. Any controversy, dispute or claim arising out of or relating to this Agreement, including any Statement of Work or Purchase Orders, must be brought in a court located in Lynchburg, Virginia. Each party submits to the jurisdiction of such courts.

IN WITNESS WHEREOF, the parties hereto have caused this agreement to be duly executed the day and year first above written.

LIBERTY UNIVERSITY, INC.

By: _____
Name: Jamie Hill
Title: Director, Procurement
Date: 3/19/15

MEDIA PARTNERS, INC.

By: _____
Name: Nancy Bono
Title: Partner
Date: 02/12/15

Master Purchasing Agreement       Page 14 of 16       Liberty University

Case 6:20-cv-00002-NKM   Document 1-1   Filed 01/03/20   Page 14 of 19   Pageid#: 23



# CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY):** 3/3/2015

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

**PRODUCER:** Rogers Insurance Agency, 512 W Williams St, PO Box 945, Apex, NC 27502

**CONTACT NAME:** Carrie Sayers
**PHONE:** (919) 362-8310
**FAX:** (919) 362-4101
**E-MAIL:** carrie@rogersinc.net

**INSURER A:** Hartford Fire Ins Co — NAIC # 19682

**INSURED:** MEDIA PARTNERS, INC, 13200 STRICKLAND RD, RALEIGH, NC 27613

**CERTIFICATE NUMBER:** 14/15

## COVERAGES

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF | POLICY EXP | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | GENERAL LIABILITY | | | | | | EACH OCCURRENCE | $ |
| | COMMERCIAL GENERAL LIABILITY | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | CLAIMS-MADE / OCCUR | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | | | | | | | GENERAL AGGREGATE | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: POLICY / PRO-JECT / LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | AUTOMOBILE LIABILITY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ALL OWNED AUTOS / SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | HIRED AUTOS / NON-OWNED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | UMBRELLA LIAB / OCCUR | | | | | | EACH OCCURRENCE | $ |
| | EXCESS LIAB / CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | DED / RETENTION $ | | | | | | | $ |
| A | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY — ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) | | N/A | 22WBCCS1218 | 12/22/2014 | 12/22/2015 | X WC STATUTORY LIMITS | |
| | | | | | | | E.L. EACH ACCIDENT | $ 500,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 500,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 500,000 |

**DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES** (Attach ACORD 101, Additional Remarks Schedule, if more space is required)
Waiver of Subrogation is granted for Workers Compensation coverage where permitted by law and required by written contract per form #TBD.

**CERTIFICATE HOLDER**
bcarlson17@liberty.edu
Liberty University, Inc.
Attn: Rob Wells
1971 University Blvd.
Lynchburg, VA 24515

**CANCELLATION**
SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.

**AUTHORIZED REPRESENTATIVE:** Carrie Sayers/CARRIE

ACORD 25 (2010/05)
INS025 (201005) 01
© 1988-2010 ACORD CORPORATION. All rights reserved.
The ACORD name and logo are registered marks of ACORD



# ACORD® CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY):** 03/03/2015

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

**PRODUCER:** Mary Wilson Insurance Agency Inc
State Farm
9630-115 Falls of Neuse Rd
Raleigh, NC 27615

**CONTACT NAME:** Brady Smith
**PHONE (A/C, No, Ext):** 919-872-1225
**FAX (A/C, No):** 919-676-2327
**E-MAIL ADDRESS:** brady@marywilsonsmyagent.com

**INSURER(S) AFFORDING COVERAGE** | **NAIC #**
**INSURER A:** State Farm Fire and Casualty Company | 25143
**INSURER B:**
**INSURER C:**
**INSURER D:**
**INSURER E:**
**INSURER F:**

**INSURED:** MEDIA PARTNERS INC
# 153
13200 STRICKLAND RD STE 114
RALEIGH NC 27613-5212

## COVERAGES    CERTIFICATE NUMBER:    REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **COMMERCIAL GENERAL LIABILITY** ☒  ☐ CLAIMS-MADE ☒ OCCUR | | | 93-BQ-R060-4 | 07/26/2014 | 07/26/2015 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 300,000 |
| | | | | | | | MED EXP (Any one person) | $ 5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: ☒ POLICY ☐ PROJECT ☐ LOC ☐ OTHER: | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | | | | | | | | $ |
| | **AUTOMOBILE LIABILITY** ☐ ANY AUTO ☐ ALL OWNED AUTOS ☐ HIRED AUTOS ☐ SCHEDULED AUTOS ☐ NON-OWNED AUTOS | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | **UMBRELLA LIAB** ☐ OCCUR **EXCESS LIAB** ☐ CLAIMS-MADE ☐ DED ☐ RETENTION $ | | | | | | EACH OCCURRENCE | $ |
| | | | | | | | AGGREGATE | $ |
| | | | | | | | | $ |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y/N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | | | | ☐ PER STATUTE ☐ OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

**DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES** (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
Liberty University its Trustees, Officers, Employees and Agents are listed as additional Insured as it pertains to the work done/service provided to Liberty University. This policy is endorsed with a waiver of subrogation. Additional insured endorsement/waiver of subrogation will be mailed to Liberty University.

**CERTIFICATE HOLDER**
Liberty University, Inc.
Attn: Rob Wells
1971 University Blvd.
Lynchburg, VA 24515

**CANCELLATION**
SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.

**AUTHORIZED REPRESENTATIVE**
*Brady L. Smith*

© 1988-2014 ACORD CORPORATION. All rights reserved.
ACORD 25 (2014/01)    The ACORD name and logo are registered marks of ACORD    1001486 132849.9 02-04-2014

Case 6:20-cv-00002-NKM   Document 1-1   Filed 01/03/20   Page 16 of 19   Pageid#: 25



**EXHIBIT A**

February 12, 2015

Liberty University
Attn: Don Moon
cc: Randy Smith

Dear Mr. Moon:

This agreement is between **Liberty University, Inc.** specific to the Liberty Flames Sports Network (LFSN), as Client, and Media Partners, Inc. (MPI) as Agency, and outlines the services to be provided as a strategic media buying partner beginning immediately upon signature.

**Scope of Work:** Taking LFSN to broadcast radio channels in the following designated target markets:

- Roanoke, VA (reconciling only)
- Richmond, VA
- Norfolk, VA
- Fredericksburg, VA
- Charlottesville, VA
- Harrisonburg, VA
- Tri-Cities (western VA)
- Winchester, VA
- Greensboro, NC
- Raleigh/Durham, NC

Project to include:
- Market research
- Market trips to all above markets
- Contract negotiations (face-to-face)
- Media planning & placement
- Monthly invoice reconciliations (once live) - August 2015 thru March 2016

Pricing:
Payment for services will be in the form of a 15% agency commission on the total to be paid by Liberty University, Inc. for LFSN media placed by MPI with a guaranteed minimum of $260,000 media placement. In the event media placement under this agreement reaches a cumulative total of $550,000, prior to any additional services being rendered by MPI or costs incurred by Client, both parties must mutually agree in writing to extend the services stipulated within this agreement. Client will pay Agency an advance of $39,000.00 for commissions on the guaranteed minimum

mindful**media**marketing



media placement in six equal monthly payments of $6,500 each beginning February of 2015 and, to the extent paid, will be shown as a credit on Agency invoices for media placements until the credits for advance payment on the guaranteed minimum media placement have been exhausted. Any balance remaining for media placements above the guaranteed minimum shall be paid as payment for such media placements becomes due from Client and is invoiced by Agency.

This monthly service amount includes "turnkey pricing" for all agency research, meeting times, agency services, market travel and expenses for the above markets.

Proposed by:
*Nancy Bono*

Nancy Bono
Media Partners, Inc.
Date: 2/12/15

Accepted by:

Don Moon
Liberty University, Inc.
Date: 3-19-2015

mindful**media**marketing



**Liberty University**
1971 University Blvd., Lynchburg, VA 24515
Procurement@liberty.edu  434.592.3012
Procurement Department

| | |
|---|---|
| PO Number: | P0100176 |
| Issue Date: | 03/20/15 |
| Delivery Date: | 03/26/15 |

Contact buyer to confirm acceptance of PURCHASE ORDER and delivery date.

**Supplier:**
Vendor Fax:
Vendor Phone:
Media Partners Inc
4024 Barrett Dr Ste 201
Raleigh NC 27609-6625

**Billing Address:** Send invoice to address on upper left, attention "Accounts Payable, MSC Box #710305." Show PO number and your Federal Tax ID or Social Security Number on your invoice.

**Ship to:**
Jamie Glass - Adm Asst. Athletic Ext. Op.
12th Street LU Receiving
1900 12th Street
Lynchburg VA 24501

| Buyer | Terms |
|---|---|
| Mary C Franklin | Net 45 - Unless Otherwise stated in this Document |

| Description | Quantity | Unit Cost | Total Cost |
|---|---|---|---|
| Contact: Nancy Bono<br>provide radio program placement in VA and NC.<br>Contract will run for 6 months.<br>6 Payments of $6,500 to total $39,000.<br>Net Terms are set at NET45<br><br>SVCNTRCT<br>Service Contracts | 1.00 EA | 39,000.0000 | 39,000.00 |

FOB: Liberty University Destination

**TOTAL:** 39,000.00

IMPORTANT: TERMS AND CONDITIONS SET FORTH ON THE LIBERTY WEBSITE OF http://www.liberty.edu/poterms ARE AN INTEGRAL PART OF THIS AGREEMENT/CONTRACT. BY ACCEPTING THIS PURCHASE ORDER YOU ARE AGREEING TO THE TERMS AND CONDITIONS AS SET FORTH ON THE WEBSITE.

The Purchase Order number must appear on all packages, invoices, packing slips, and correspondence. Packing slips must accompany all shipments. Send all invoices directly to acctspay@liberty.edu (Accounts Payable Department) for processing or mail to the attention of Accounts Payable. A valid IRS W9 must be on file before payments can be issued.

FAILURE TO PRESENT THIS PURCHASE ORDER NUMBER ON THE INVOICE AS SET FORTH IN THE CONDITIONS STATED WILL NEGATE THIS CONTRACT AND LIBERTY UNIVERSITY WILL NOT BE HELD LIABLE FOR PAYMENT OF SUCH GOODS OR SERVICES.

LIBERTY UNIVERSITY IS A TAX-EXEMPT ORGANIZATION. PLEASE COMPLY ACCORDINGLY.